KEARSE, Circuit Judge,
dissenting in part:
I join so much of the majority’s opinion as affirms the district court’s judgment as to Counts Two and Three; but I respectfully dissent from the reversal with respect to Count One, which challenged so much of the Citizens’ Election Program (“CEP”) as provides for the funding of candidates for the Connecticut State legislature on the basis of their parties’ performance in the prior gubernatorial election.
Under the CEP, a candidate for the legislature whose party garnered less than 20% of the vote in the prior gubernatorial election is not eligible to receive the maximum level of public funding for the legisla *250 tive election if that party failed to win (and failed to collect petition signatures equaling) at least 20% of the votes cast in the prior election for that legislative seat. In contrast, a candidate for the same legislative seat whose party similarly failed to win at least 20% of the votes in the prior election for that legislative seat is eligible to receive the maximum level of public funding for the legislative election if his or her party won at least 20% of the vote in the prior gubernatorial election. With respect to public support in such a legislative district, as neither candidate’s party has received 20% of the vote the candidates are similarly situated. Yet under the CEP one candidate would receive a far larger grant of public funding than the other.
A candidate’s First Amendment rights are burdened when the state provides funds only, or in a greater amount, to his or her opponent, thereby increasing the opponent’s relative position. See Davis v. FEC, — U.S. —, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). In considering
a challenge to a state election law [a court] must weigh “the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate” against “the precise interests put forward by the State as justifications for the burden imposed by its rule,” taking into consideration “the extent to which those interests make it necessary to burden the plaintiffs rights.”
Burdick v. Takushi, 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (quoting Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (emphasis ours)). The State of Connecticut has an obviously significant and important interest in preventing corruption or the appearance of corruption. But no one has explained why the measurement of candidates’ eligibility for public funds in a local election for a legislative seat by reference to their parties’ prior vote-garnering performance in a different election, i.e., the previous statewide race for governor, is necessary.
The majority’s reliance on Buckley v. Valeo, 424 U.S. 1, 85-108, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), seems to me misplaced since that case involved only campaigns for the same office, the presidency; thus, only elections that were comparable provided the measure for determining whether and to what extent the various parties in Buckley were entitled to public funds. Shortly after the Supreme Court decided Buckley, it decided Bang v. Noreen, 436 U.S. 941, 98 S.Ct. 2840, 56 L.Ed.2d 782 (1978), in which it summarily affirmed Bang v. Chase, 442 F.Supp. 758 (D.Minn.1977) (three-judge court), which had struck down a Minnesota statute giving public funds to local legislative candidates based on the public support of their parties statewide, because “the aggregate political party preferences expressed by all the state taxpayers in Minnesota have no rational relation to the support for particular parties or for particular candidates within legislative districts,” 442 F.Supp. at 768. Although “the precedential effect of a summary affirmance extends no further than the precise issues presented and necessarily decided by those actions,” Anderson, 460 U.S. at 784 n. 5, 103 S.Ct. 1564 (internal quotation marks omitted), such a decision does endorse what was “necessarily decided,” id. (internal quotation marks omitted). In Bang, the district court held that giving public funds to local legislative candidates based on the public support of their parties statewide “invidiously discriminates between candidates of different political parties and abridges the First Amendment right of political association.” 442 F.Supp. at 768. I see no reason to believe that the Supreme Court’s summary affirmance did *251-255 not endorse this holding, which seems applicable to the Connecticut scheme.
In sum, I would affirm the district court’s ruling on Count One, that the CEP grant-eligibility requirements based on mismatched election races are not necessary to achieve the State’s goals.